## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement ("Agreement") is entered into between Plaintiff, JOSEPH GUGLIELMO, including his heirs, executors, administrators, successors, and assigns (hereinafter, collectively, "Releasing Parties") and Defendant, FULL COMPASS SYSTEMS, LTD. and their affiliates, parent companies, subsidiaries, divisions, successors and assigns (hereinafter, collectively, "Defendants").

WHEREAS, Plaintiff alleges that Defendant is a private entity that owns and/or operates *www.fullcompass.com* (hereinafter the "Website"), which is available through the internet to personal computers, laptops, mobile devices, tablets, and other similar technology and that the Website is a place of public accommodation;

WHEREAS, Plaintiff filed a purported class action alleging that following a compliance review, the Website is not fully accessible to individuals with disabilities in violation of Title III of the Americans with Disabilities Act of 1990 ("ADA"), the New York State Civil Rights Law, the New York State and New York City Human Rights Laws and has filed suit in the U.S. District Court for the Southern District of New York (the "Court") entitled *JOSEPH GUGLIELMO, on behalf of himself and all others similarly situated v. FULL COMPASS SYSTEMS, LTD.* (the "Action") alleging that the Website is not fully accessible to individuals with disabilities in violation of Title III of the ADA, state and local law.

NOW THEREFORE, in consideration of the mutual promises contained therein, and intending to be legally bound, the parties agree, as follows:

1.      General Release of Claims.  For and in consideration of the promises, commitments and undertakings set forth in this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Plaintiff shall release and discharge Defendants, The Cincinnati Insurance Company, together with their past, present, and future officers, directors,

employees, stockholders, parent entities, sister entities, subsidiary entities, insurers, and to the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing, each in their capacity as such (collectively, the "Released Parties"), from any and all claims, causes of action, suits, demands, rights, liabilities, damages, lawsuits, losses, fees, costs or expenses of any kind whatsoever, whether known or unknown, including any monetary, injunctive or declaratory relief relating thereto, or for reimbursement of attorneys' fees, costs and expenses, relating to the Action, but not including claims related to the enforcement of this Agreement.  This release specifically applies to all claims regarding the accessibility of the Website, including but not limited to all claims arising from or relating to the ADA, any federal, state, or local law, statute or ordinance, rule or principle of common law or doctrine in law or equity, known or unknown, suspected or unsuspected, foreseen or unforeseen, real or imaginary, actual or potential, through the date of this Agreement (the "Released Claims").  Plaintiff, on his own behalf and on behalf of the Releasing Persons, acknowledges that he may have released claims that are presently unknown and that the release contained in this Agreement is intended to and does fully, finally and forever discharge all such released claims, whether now asserted or un-asserted, known or unknown, he may have against Defendants and Released Parties.

2.      Attorneys' Fees, Costs, Expenses, and Payments.  As a full and complete compromise of all Released Claims, Defendant agrees to pay, and GUGLIELMO agrees to accept the total sum of $19,500 (the "Settlement Payment"), as payment in full. The Settlement Payment shall be made within twenty-one (21) days following Defendant's receipt of the Agreement executed by Plaintiff, and W9 of Plaintiff's counsel. The Settlement Payment should be made payable to: STEIN SAKS, PLLC, 285 Passaic Street, Hackensack, NJ, 07601. The Settlement Payment is made in satisfaction of all claims which were raised, or could or should have been raised in the Lawsuit, by GUGLIELMO, whether known or unknown, contingent, liquidated or unliquidated, including without limitation,

GUGLIELMO's attorney fees, court costs, associated expenses, expert or consultant fees or expenses,

damage claims, if any, and any and all other claims relating to the Lawsuit and the Released Claims.

       3.       <u>Remedial Measures</u>.  The parties agree to comply with the terms of the Consent Decree

entered in this action, which includes the following:

> Web Accessibility Conformance Timeline: Defendant shall continue to ensure full and equal enjoyment of the goods, services, privileges, advantages, and accommodations provided by and through the Website (including all pages therein), including websites (including all pages therein and linked to therefrom) that can be navigated to/from the Website or which when entered reroute to the Website (collectively the "Websites"), according to the following timeline and requirements provided that the following dates will be extended in the instance that the Department of Justice issues regulations for websites under Title III of the ADA while this Consent Decree is in effect and which contain compliance dates and/or deadlines further in the future than the dates set forth herein:

> a. Defendant has already made modifications to the Websites, and, during the twenty-four (24) months following the Effective Date [of the Consent Decree], Defendant shall to the extent necessary continue to modify the Websites as needed to substantially conform to the Web Content Accessibility Guidelines 2.1 ("WCAG 2.1") to the extent determined to be applicable, or any other WCAG guidelines deemed to be applicable, in such a manner so that the Websites will continue to be accessible to persons with vision disabilities.

> b. The Parties acknowledge that Defendant's obligations under this Consent Decree do not include: (i) substantial conformance with WCAG standards for user-generated content and/or other content or advertisements and/or websites that Defendant does not own, operate, prepare or control but that are linked from the Websites (including, but not limited to, any content/websites hosted by third parties and implemented on the Website); and (ii) the provision of narrative description for videos. The Parties also agree that if the U.S. Department of Justice or a Court with jurisdiction over this matter determines that the WCAG standards or any successor standard that Defendant may have utilized are not required by applicable law, Defendant may choose, in their discretion, to cease the remediation efforts described above.

> c. In achieving such conformance, Defendant may, among other things, rely upon, in whole or in part, the User Agent Accessibility Guidelines ("UAAG") 1.0; the Authoring Tool Accessibility Guidelines ("ATAG") 2.0; the Guidance on Applying WCAG 2.1 to Non-Web Information and Communications Technologies ("WCAG2.1ICT"), published by the Web Accessibility Initiative of the World Wide Web Consortium ("W3C"); as well as other guidance published by the W3C's Mobile Accessibility Task Force; the British Broadcasting Corporation Mobile Accessibility Standards and Guidelines 1.0 ("BBCMASG 1.0") or any combination thereof. If Defendant, in reasonably relying upon any of the foregoing, fails to achieve substantial conformance with the applicable WCAG standard, Defendant will have nonetheless met its obligations.

d. If Defendant is unable to achieve substantial conformance with the applicable WCAG guidelines despite having used Reasonable Efforts to achieve substantial conformance, it shall be deemed to have satisfied its obligations under this Consent Decree as set forth herein regarding remediation of the Website.

## MISCELLANEOUS PROVISIONS

4.        Enforcement.  If any of the parties hereto claim that this Agreement or any portion of it has been violated ("breach"), the party alleging the breach shall give written notice (including reasonable particulars) of such violation to the party alleged to be in breach.  The party alleged to be in breach of the agreement must respond to such written notice of breach no later than sixty calendar days thereafter ("Cure Period").  If the alleged breach is of a nature that it cannot be cured during the Cure Period, the parties shall mutually extend the Cure Period to reflect the reasonable time period in which the alleged breach can be cured.  If the parties are unable to reach a mutually acceptable resolution during the Cure Period, or any extension thereof, the party alleging a breach of the Agreement may seek court enforcement of compliance with this Agreement.  The Court shall, in its discretion, award reasonable attorneys' fees and costs to the prevailing party in any such enforcement action.

5.        Scope.  This Agreement does not purport to remedy any violations or potential violations of the ADA or any federal or state law, other than those relating to the accessibility of the Website to individuals with vision disabilities.

6.        Authority.  The signatories represent that they have the authority to bind the respective parties identified below to the terms of this Agreement.

7.        Confidentiality.  Plaintiff, for himself and his Counsel, agents and representatives, and Defendant, its Counsel, agents and representatives, agree that, they will not without the prior written consent of the other Party communicate, publish, display, discuss, disclose, reveal or characterize (directly or indirectly by innuendo or other means) in any way to anyone under any circumstances (i) the terms of this Agreement and (ii) the negotiations leading up to this Agreement, except (a) as may

4

be required by Order of Court or other quasi-judicial or regulatory body with the legal right and power to demand such information, (b) to Plaintiff's or Defendant's legal and financial advisors, in each case where such disclosure may be required for legitimate legal, business or tax purposes and where the recipient of such information agrees to receive and maintain the information in strict confidence in accordance with the terms of this Agreement, (c) to any appropriate regulatory or tax authorities with jurisdiction over Plaintiff or Defendant, and (d) as otherwise may be required by law.  Prohibited disclosure hereunder shall include, without limitation, the making of any statement, written or oral, to any person through any medium, including (without limitation) newspaper, magazine, radio, television or electronic media (such as internet website, chat room, instant messaging or any other similar medium).  If Plaintiff or Defendant, or their respective Counsel, agents or representatives receive an unsolicited inquiry about this Agreement, the Action, any disputed matter, any released claims, or any other matter subject to the confidentiality and non-disclosure provisions of this Agreement, such Party will respond only that "the matter has been amicably resolved." If any Party shall be in material breach of the obligations in respect of the confidentiality and non-disclosure provisions of this Agreement, the non-breaching Party shall be entitled to, in addition to other remedies, temporary and permanent injunctions restraining such breach, and to a decree for specific performance of this provision.  The Plaintiff and Defendant agree that calculating the damages for the breach of this provision is difficult.  Therefore, Plaintiff consents to the entry of an award of liquidated damages by a court of competent jurisdiction finding that Plaintiff breached this provision in an amount equal to Settlement Amount described in Paragraph 2, above. The Parties further agree that non-breaching Party shall be entitled to recover from the breaching Party its attorneys' fees and costs expended in any action or proceeding to enforce this Paragraph of this Settlement Agreement. Notwithstanding the provisions above, it shall not be a breach of this provision for Defendant to disclose the Settlement Agreement for the purposes of facilitating the withdrawal or dismissal of

subsequent claims made by an individual with a disability, or his/her representative, that Defendant's

Website is not accessible in violation of the law, however, in such case, Defendant's shall redact the

provisions of Paragraph 2 (Payment of Certain Expenses) above.

        8.      Counterparts Permissible.  This Agreement may be executed in counterparts, each of

which shall be deemed an original against the Party whose signature is provided, and all of which

shall be considered an original and together shall constitute one agreement binding on all Parties.

Electronic signatures shall be deemed to be as valid and enforceable as original ink signatures.  Given

Plaintiff is visually impaired, it is permissible for his to electronically sign the Agreement by

confirming in email that he agrees to all of its terms or DocuSign or a comparable program.

        9.      Notices.  All letters, notices, requests, demands and other communication required or

permitted to be given to the Parties pursuant to this Agreement shall be in writing, provided by

electronic mail, facsimile, and/or next-day (excluding Saturday and Sunday) express delivery service

and addressed as follows:


For Plaintiff:

> Yaakov Saks, Esq.
> STEIN SAKS, PLLC
> 285 Passaic Street
> Hackensack, NJ, 07601
> Email: ysaks@steinsakslegal.com
> Phone: 201-282-6500
> Fax: 201-282-6501

For Defendants:

> Nadia Del Toro, Esq.
> LITCHFIELD CAVO, LLP
> 420 Lexington Ave.
> New York, New York
> 212-434-0100
> deltoro@litchfieldcavo.com

10.     <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of New York without regard to conflicts or choice of law rules or principles.  Any action to enforce the terms of this Agreement shall be filed in the State of New York only.

11.     <u>Waiver</u>.  If a party, by its actions or omissions, waives or is adjudged to have waived any breach of this Agreement, any such waiver shall not operate as a waiver of any other subsequent breach of this Agreement.

12.     <u>Non-Assignment.</u>  Plaintiff represents and warrants that he has made no assignment, and will make no assignment of any claim, right to sue, right of action, or any right of any kind whatsoever, embodied in any of the claims and allegations which are being released, as set forth above, and that no other person or entity of any kind had or has any interest in any of the demands, obligations, actions, causes of action, debts, liabilities, rights, contracts, damages, attorneys' fees, costs, expenses, losses, or claims referred to herein.

13.     <u>Non-admission of Wrongdoing</u>.  The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by the Released Parties of wrongdoing or evidence of any liability or unlawful conduct of any kind.

14.     <u>Amendment</u>.  This Agreement may not be modified, altered, or changed except in writing and signed by all Parties wherein specific reference is made to this Agreement.

15.     <u>Stipulation of Dismissal</u>.  Within 10 days of the date Plaintiff's counsel receives the Settlement Amount, the parties, through their respective attorneys of record, shall execute, and Plaintiff, through his attorneys of record shall file the stipulation and order of dismissal.

16.     <u>Successor and Assigns</u>.  This Agreement is binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal or legal representatives, successors and/or assigns.

17.     <u>Construction of Agreement</u>.  The parties waive all applicable rules of construction to the extent that any provision of this Agreement should or could be construed against its drafter.  The parties further agree that all provisions of this Agreement shall be construed as a whole, according to the fair meaning of the language used.

18.     <u>Severability</u>.  If any provision of this Agreement is or shall be declared invalid or unenforceable by a court of competent jurisdiction, except paragraph 1 (General Release of Claims), the remaining provisions shall not be affected thereby and shall remain in full force and effect.

19.     <u>Integration and Modification</u>.  This Agreement contains all of the representations, promises, and understandings of the parties.  There are no other agreements or understandings except as set forth therein.

*Intending to be legally bound, the parties have executed this Agreement.*

IN WITNESS WHEREOF, the CLAIMANT (RELEASOR) has hereunto set CLAIMANT's (RELEASOR's) hand and seal of the ___10___ day of ___June___, 2020.

_____
CLAIMANT/ RELEASOR
JOSEPH GUGLIELMO

*In the Presence Of:*
STATE OF NEW YORK       )

                                        ) ss.:

COUNTY OF ___Bryer___   )

On ___6/10/2020___, 2020 before me, the undersigned, personally appeared JOSEPH GUGLIELMO Personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity and that by his/her/their signatures on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

YAAKOV SAKS
NOTARY PUBLIC OF NEW JERSEY
Comm. # 2409020
My Commission Expires 5/31/2021

8

IN WITNESS WHEREOF, MARK NASH on behalf of FULL COMPASS SYSTEMS, LTD.  (RELEASEE) has hereunto set  (RELEASEE's) hand and seal of the _____ day of _____, 2020.


_____
MARK NASH, President
FULL COMPASS SYSTEMS, LTD.

*In the Presence Of:*
STATE OF                              )

                                         ) ss.:

COUNTY OF _____)


On _____, 2020 before me, the undersigned, personally appeared MARK NASH Personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity and that by his/her/their signatures on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.


_____
NOTARY PUBLIC